William A. Taylor, III Cowley County Counselor P.O. Box 731 Winfield, Kansas 67156
Dear Mr. Taylor:
As Cowley County Counselor, you request our opinion regarding whether the emergency telephone tax proceeds (911 funds) may be used for certain items. K.S.A. 1998 Supp. 12-5304 states in part:
 "(b) Funds collected from tax (sic) imposed pursuant to K.S.A. 12-5302 . . . shall be spent solely to pay for any or all of the following:
 "(1) The monthly recurring charges billed by the service supplier for the emergency telephone service; (2) initial installation, service establishment; nonrecurring start-up charges billed by the service supplier for the emergency telephone service; (3) charges for capital improvements and equipment or other physical enhancements to the emergency telephone system; or (4) the acquisition and installation of road signs designed to aid in the delivery of emergency service."
The items in question are: (1) the purchase of a Data Transmission Network and payment of monthly charges; (2) monthly recurring charges for pagers for the Cowley County Attorney's office; and (3) costs to train civil defense personnel for creating and operating the Map-Info database which is part of the 911 emergency system.
In Attorney General Opinion No. 90-87, Attorney General Robert Stephan reviewed the legislative history of the emergency telephone statutes[1] and concluded that the cost of equipment used to receive and record 911 emergency calls as well as the cost of equipment necessary to dispatch emergency information to response units fell within the uses for 911 funds authorized by K.S.A. 1998 Supp. 12-5304. Using the rationale of that opinion, we review each item in turn.
1. Purchase of a Data Transmission Network (DTN) and payment ofthe monthly charges
You indicate that the DTN is a satellite weather information service that provides access to local, regional and national weather forecasts and information. This information system is a "stand alone" system in that all of the hardware and software is provided by DTN.
The first issue is whether the purchase cost of the DTN system is a "charge for capital improvements and equipment or other physical enhancements to the emergency telephone system." General Stephan opined that an "emergency telephone system" contemplates "a network or aggregation of parts joined in regular interaction to form an integral or organized whole serving a common purpose." This common purpose is "to provide a means of reporting emergency situations by using a single three-digit telephone number."
 "In applying this interpretation to the items listed above, the primary questions appear to be whether the items purchased constitute part of a network or organized whole, and if so, whether they contribute to the common purpose of providing a `911' emergency telephone number. Several of the items clearly satisfy both tests. The actual telephone lines and hardware, 911 monitors and printers, three-station console and recording equipment are all linked together electronically and have regular interaction with one another. Moreover, these items are necessary to receive and record emergency telephone calls at a central location. Office furniture and equipment . . . fail to satisfy either of these tests.
 [They do] not interact with the other components of the system, nor [do they] contribute . . . to the common purpose of the system."[2]
Based upon the information that you provided on the DTN system, it is our opinion that the system fails both of the tests established in Attorney General Opinion No. 90-87. The DTN system simply reports weather conditions to local officials who may then take action accordingly. It is a "stand alone" system and, therefore, is not part of the 911 network in the same way that telephone lines, monitors, printers, and recording equipment are. Moreover, it does not contribute to the common purpose of the 911 system which is simply to report emergency situations by dialing "911." Consequently, 911 funds may not fund its purchase or any charges associated with it.
2. Monthly recurring charges for pagers for the Cowley CountyAttorney's office
Attorney General Stephan opined that purchase of equipment used to dispatch emergency response such as pagers and mobile radios is an appropriate use of 911 funds. The pagers at issue in Attorney General Opinion No. 90-87 were used to relay information from the base station to emergency response units:
 "[It] is our opinion that [pagers] may be purchased with emergency telephone tax funds. The common meaning of the term `emergency telephone system' would seem to include any item which has regular interaction with the other components of the system and which contributes to the common purpose of the system. Our review of legislative history has convinced us that relaying information from the base station to emergency response units is part of the common purpose of the [911] system. Pagers and mobile radios may be necessary in order to maintain communication with the base station and receive this information. Therefore, a strong argument can be made that these items are as much a part of the overall emergency telephone system as the dispatch equipment at the base station." (Emphasis added.)
Attorney General Stephan indicated that an "emergency response unit" includes "police, fire, and medical." In some counties, a county attorney's office may be part of a law enforcement response to a 911 emergency and, therefore, in those circumstances, the use of 911 funds for the recurring monthly charges for pagers may be appropriate. Therefore, if employees of the Cowley County Attorney's office are part of the law enforcement response to 911 emergencies, it is our opinion that 911 funds may be used.
3. Costs to train personnel for creating and operating theMap-Info Database
You indicate that 911 funds are now used for the Map-Info Database which is part of the 911 Mapping and Signing System. Your query is whether 911 funds may be used to pay for a two-day training course in Dallas, Texas on the creation and operation of the Map-Info Database.
Attorney General Opinion No. 90-87 addresses the use of 911 funds to pay for equipment, not training on the equipment. However, if 911 funds are to be used, the training must fall within the parameters of subsection (b) of K.S.A. 1998 Supp. 12-5304. Subsection (b) allows 911 funds to be spent for monthly service charges for the 911 system, initial installation, establishment of service and start-up charges for the 911 system, equipment for the emergency telephone system, and road signs. Clearly, subsection (b) does not provide for training and, therefore, it is our opinion that 911 funds may not be used.
Summarizing, it is our opinion that proceeds from the emergency telephone tax created by K.S.A. 1998 Supp. 12-5302 may not be used for the purchase of a Data Transmission Network or its monthly charges. Moreover, such proceeds may not be used for the costs involved in training personnel on the creation and operation of the Map-Info Database. However, if employees of the Cowley County Attorney's office are part of the law enforcement response to 911 emergencies, 911 funds may be used to pay for the monthly recurring charges for pagers used by that office.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] K.S.A. 1998 Supp. 12-5301 et seq.
[2] Attorney General Opinion No. 90-87.